IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF MARK JENNINGS, by Administratrix ad Prosequendum, Emily Jennings,<br><br>        Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY a/k/a METLIFE,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-5376 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Robert Aaron Greenberg, Esq.
ARONBERG, KOUSER & PAUL
430 Route 70 West
Cherry Hill, NJ 08002
        Attorney for Plaintiff

Randi F. Knepper, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLC
100 Mulberry Street
Newark, NJ 07102
        Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

This matter comes before the Court on the motion of Defendant Metropolitan Life Insurance Company ("Metlife") for summary judgment. [Docket Item 12.] In this action, Plaintiff Emily Jennings, Administratrix ad Prosequendum of the Estate of Mark Jennings, challenges Metlife's denial of the Estate's claim for life insurance benefits under the Delta Pilots Disability

and Survivorship Trust ("the Plan") pursuant to the Employee
Retirement Income Security Act of 1974. The Plan contracted with
Xerox Business Services, LLC ("Xerox")[1] to handle billing and
cancellation decisions. Metlife, the Plan's claim administrator,
ultimately denied the Estate's claim because Xerox cancelled Mr.
Jennings' life insurance coverage, allegedly upon his written
request in April, 2009, and Metlife had not received premiums
for Mr. Jennings' life insurance coverage for over six months at
the time of his death in December, 2009. Plaintiff contends that
Mr. Jennings never cancelled his life insurance coverage and, at
the time of his death, was on a special conflict military leave
of absence which required his employer, Delta Air Lines, Inc.
("Delta"), to continue paying premiums on his behalf.

Metlife asserts that even if Xerox made a mistake in
cancelling Mr. Jennings' life insurance coverage, Metlife had no
role in the cancellation and thus cannot be responsible if it
was erroneous. Accordingly, Metlife's motion requires the Court
to consider whether Metlife properly denied the Estate's claim
for benefits under the terms of the Plan and whether Metlife can
be liable for a potential error by Xerox over two years prior to
the filing of the claim for benefits. Delta and Xerox are not
parties herein.

---

[1] The parties' exhibits refer to both "ACS" and "Xerox" because
Xerox was the successor of Affiliated Computer Services, Inc.
("ACS").

For the reasons discussed below, the Court will grant Metlife's motion for summary judgment, but does not determine the liabilities of Delta or Xerox for the alleged mistakes in cancelling the decedent's life insurance coverage in 2009.

## II.  BACKGROUND

### A.  Facts

Mark Jennings was killed by a motorist outside of his Cherry Hill, New Jersey home on December 14, 2009. (Pl. Supp. Statement of Disputed Material Facts ("Pl. SSMF") [Docket Item 15-2] ¶ 1.) At the time of his death, Delta employed Mr. Jennings as a pilot and offered benefits to its employees, including an employee welfare benefit plan entitled "Delta Pilots Disability and Survivor Trust." (Id. ¶ 2.) Metlife was the claims administrator of the Plan and responsible for paying benefits under the Plan. (Id. ¶ 3.) Xerox was the records custodian for the Plan. (Id.) Because Metlife was not the record-keeper under the Plan, Metlife did not maintain records regarding who is insured under the terms of the Plan or send bills or other pre-claim notices to Plan participants regarding their eligibility or participation in the Plan. (Def. Statement of Uncontested Material Facts ("Def. SMF") [Docket Item 12-2] ¶ 5.)

At the time of his death, Mr. Jennings was a Lieutenant Colonel enlisted with the New Jersey Air National Guard on

active duty in support of Operation Noble Eagle. (Jennings Aff.,

Pl. Ex. B [Docket Item 15-5] ¶ 3.) As such, Mr. Jennings was on

a military leave of absence from Delta from December 1, 2008

until his death on December 14, 2009. (Ex. B. to O'Dell Cert.

[Docket Item 12-5] at ML0127.)[2]

The Plan defines "ELIGIBLE CLASS(ES)" in relevant part as

follows:

> The following employees are eligible for coverage:
>
> - Employees classified as pilots by Delta Air Lines and are
> regularly employed by Delta Air Lines.
> - Pilot employees who retire from Delta Air Lines directly
> from active work or disability status.
> - Pilot employees who become disabled and who qualify for
> benefits under Delta Pilots Disability and Survivorship
> plan.

(Def. SMF ¶ 2; see also Def. Ex. A [Docket Item 12-4] at

ML0173.) The Plan identifies the date when an employee's

insurance will end as follows:

> DATE YOUR INSURANCE ENDS
> Your insurance will end on the earliest of:
> 1. the date the Group Policy ends; or
> 2. the date insurance ends for Your class; or
> 3. the end of the period for which the last premium has
> been paid for You; or
> 4. the date Your employment ends; Your employment will end
> if You cease to be Actively at Work in any eligible class,
> except as stated in the section entitled CONTINUATION OF
> INSURANCE WITH PREMIUM PAYMENT; or
> 5. the date You are no longer in an Eligible Class; or

---

[2] Metlife relies on its administrative record maintained in
connection to the Estate's claim for basic life insurance
benefits. Hereinafter, the Court refers to specific pages of the
administrative record by the corresponding Bates stamped
numbers.

4

6. the 30th day following the date furlough pay ends; or
7. the 30th day following the date Your unpaid leave of absence ends; or
8. the 30th day following the date You are suspended; or
9. the date the Delta Pilots Disability and Survivorship Plan ends.
. . .
In certain cases insurance may be continued as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT.

(Def. SMF ¶ 3; see also Def. Ex. A at ML0173-74). The

"CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT" section

provides as follows:

AT THE POLICYHOLDER'S OPTION

The Policyholder has elected to continue insurance by paying premiums for his employees who cease Active Work in an eligible class for any of the reasons specified below:
1. if You cease Active Work due to injury or sickness contact the Policyholder to determine if Your insurance can be continued and for how long;
2. if You cease Active Work due to layoff or voluntary or involuntary severance contact the Policyholder to determine if any or all Your insurance can be continued and for how long;
3. if You cease Active Work due to any other Policyholder approved leave of absence discuss with the Policyholder at the time You receive approval to take the leave of absence whether Your insurance can be continued and for how long.

At the end of any of the continuation periods listed above, Your insurance will be affected as follows:
- if You resume Active Work in an eligible class at this time, You will continue to be insured under the Group Policy;
- if You do not resume Active Work in an eligible class at this time, Your employment will be considered to end and Your insurance will end in accordance with the DATE YOUR INSURANCE ENDS subsection of the section entitled ELIGIBILITY PROVISIONS: INSURANCE FOR YOU.

(Id. ¶ 4; see also Def. Ex. A at ML0175.)

5

In or around October, 2011, Metlife received an inquiry from Mr. Jennings' wife, Emily Jennings, seeking to file a claim for basic life insurance benefits under the Plan. (Def. SMF ¶ 6.) In response, Metlife contacted Xerox and was advised that Mr. Jennings' basic life insurance was cancelled effective May 31, 2009 and thus not in effect on the date of his death. (Def. Ex. B at ML0007-08.) Metlife was also informed that Mr. Jennings' employment with Delta ended on May 15, 2009. (Id. at ML0010.) By letter dated October 24, 2011, Metlife notified Ms. Jennings that her claim was denied. (Id. at ML0012.) The letter stated, "According to our records, the employer-employee relationship terminated on May 15, 2009. Consequently, Mark Jennings' basic life insurance coverage under the Delta Air Lines Employee Benefit Plan terminated. There was no active basic life coverage in effect at the time of Mr. Jennings['] death on December 13, 2009[.]" (Id.)

Ms. Jennings appealed the claim determination by letter dated December 6, 2011. (Id. at ML0014.) Ms. Jennings denied that her husband's employment with Delta had terminated and noted, instead, that he was on a "special conflict military leave of absence" at the time of his death, which required Delta

to continue paying premiums on Mr. Jennings' behalf for the duration of his leave.[3] (Id.)

By letter dated February 20, 2012, Metlife upheld the denial of the Estate's claim. (Id. at ML0041-42.) Thereafter, Ms. Jennings sought representation and her counsel disputed the claim determination by letter dated April 18, 2013. (Id. at ML0050-51.) In response, Metlife contacted Xerox and confirmed the chronology of events set forth in the February 20, 2012 letter: Mr. Jennings was sent a billing invoice in March, 2009 advising him to pay the premiums for his dental, medical, and life insurance coverages in May, 2009; in response to Mr. Jennings' April, 2009 letter, Xerox cancelled all of his coverages and no additional invoices were sent; Mr. Jennings called the ESC on June 9, 2009 to confirm his cancellation request was processed and he no longer had life insurance coverage. (Id. at ML0069.) By letter dated September 10, 2013,

---

[3] Plaintiff notes that Delta's "Pilots Life Insurance and Survivor Benefits Handbook" identifies two types of military leave. The Handbook provides as follows:
> This handbook describes two types of military leave, each with different rules regarding your eligibility for Basic Life Benefit coverage:
> - Special Conflict Military Leave of Absence: Your eligibility continues as if you are an active Delta pilot for the duration of your leave
> - Military Leave of Absence: Your eligibility continues for three months following the date you are placed on a military leave of absence; after three months, you may continue your Basic Life Benefit coverage by paying the required premiums

(Pl. Ex. E [Docket Item 15-8.])

Metlife again upheld its denial of the claim for reasons
consistent with those previously stated. The letter added the
following:

> It is undisputed that the decedent was not billed for and
> did not pay any premiums for Basic Life Insurance coverage
> prior to his death. It is also undisputed that the employer
> did not pay any premiums for Basic Life Insurance coverage
> for the decedent beyond May 15, 2009. The decedent did not
> call ESC to report that he was not receiving invoices for
> the coverage. Per the plan, the decedent's Basic Life
> Insurance coverage ended on May 15, 2009, as no premiums
> were paid by the employer or the decedent after that date.

(Id. at ML0072.)

Documents in the record suggest that Mr. Jennings was sent
a billing invoice in March, 2009 advising him that he would be
responsible for premium payments related to his medical, dental,
vision, and life insurance coverages in May, 2009. (Id. at
ML0032.) Subsequently, on April 17, 2009, Mr. Jennings called
the Delta Employees Service Center ("ESC") and stated his desire
to cancel his medical, dental, and vision insurance. (Telephone
Recording April 17, 2009 attached to Def. Reply as "Passero
Recording.") During this call, Mr. Jennings expressed surprise
that he had basic life insurance coverage, but never expressly
requested that it be cancelled.[4] Thereafter, Mr. Jennings
submitted a letter dated April 20, 2009 to Xerox stating the
following:

---

[4] Initially, Mr. Jennings' stated that he did not want basic life
insurance, but later said he needed to talk to his wife about
the coverage amount.

> I am requesting that my health care benefits be
> retroactively rescinded beginning 1 DEC 2008. Since that
> time I have been on an extended military leave of absence.
> The USAF has been providing full medical and dental
> coverage through their Tricare program. Please find the
> attached photocopy insurance card. I plan to continue
> utilizing this coverage until the time I am able to return
> to Delta Airlines. Thank you for your assistance in this
> matter.

(Id. at ML0029.) Based on this letter, Xerox cancelled all of

his coverages, including dental, medical, and life insurance,

and did not send Mr. Jennings any further billing invoices. (Id.

at ML0031-32.)

On June 9, 2009, Mr. Jennings called the ESC and the

representative confirmed that they received Mr. Jennings' letter

and processed his cancellations. (Id. at ML0112.) The

representative informed Mr. Jennings that his life insurance

coverage was no longer active, but it "would be reinstated as a

Delta-provided benefit upon his return to active status." (Id.

at ML0112.)

**B. Procedural background**

On September 10, 2013, Plaintiff, the Estate of Mark

Jennings, filed this action, by and through its Administratrix

ad Prosequendum, Emily Jennings, naming Metlife as the sole

defendant, seeking to enforce the Estate's rights as a

beneficiary under an employee group life insurance plan

maintained by Mr. Jennings' employer, Delta Airlines, Inc.

Plaintiff brings this action pursuant to the Employee Retirement

Security Act of 1974 ("ERISA"). [Docket Item 1.] Defendant

Metlife filed the instant motion for summary judgment. [Docket

Item 12.] Plaintiff filed opposition [Docket Item 15] and

Defendant filed a reply [Docket Item 16.] The Court heard oral

argument on August 12, 2014, and thereafter received

supplemental briefing from the parties. [Docket Items 21 & 26.]

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly

preclude the entry of summary judgment." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, "summary

judgment will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id. The

Court will view any evidence in favor of the nonmoving party and

extend any reasonable favorable inferences to be drawn from that

evidence to that party. Scott v. Harris, 550 U.S. 372, 378

(2007).

## IV. DISCUSSION

Defendant argues that summary judgment is appropriate

because Metlife's claim determination is supported by the

administrative record and Metlife is not responsible for any errors made by the record-keeper, Xerox. Specifically, Metlife contends that its denial of the Estate's claim was proper because (1) Mr. Jennings was billed by the Delta ESC for his basic life insurance coverage, but did not pay the premiums required to maintain this coverage after May 15, 2009; (2) Xerox cancelled Mr. Jennings' basic life insurance at his request; and (3) Metlife was not paid the required premiums to maintain Mr. Jennings' basic life insurance coverage, either by Delta or by Mr. Jennings, after May 15, 2009 when the coverage lapsed.

Plaintiff responds that there are disputes of material fact which preclude summary judgment. Namely, Plaintiff notes disputes regarding the following: (1) whether Mr. Jennings cancelled his life insurance coverage in addition to his medical and dental benefits; (2) whether Mr. Jennings attempted to cancel his coverage by calling the Delta ESC and whether such cancellation was effective despite not being in writing; (3) whether Metlife erred in failing to send an invoice for his life insurance coverage following Mr. Jennings' April 20, 2009 letter; and (4) what the reasonable expectation of the parties were with regard to the life insurance coverage. Plaintiff further argues that Metlife's denial of the Estate's claim was unreasonable and contrary to the intent and reasonable expectations of Plaintiff.

11

"ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 58 F.3d 896, 901 (3d Cir. 1995) (internal quotations omitted). As such, the statute, pursuant to 29 U.S.C. § 1132(a)(1)(B), affords a cause of action to any participant or beneficiary of a plan seeking to recover benefits or enforce rights under the terms of the plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108 (1989); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The plan at issue in this case is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1).

In the present action, Plaintiff challenges a benefit determination made by the claim administrator, Metlife. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the court applies de novo review, "the role of the court is to determine whether the administrator . . . made a correct decision. The administrator's decision is accorded no deference or presumption of correctness. The court must review the record and determine whether the administrator properly

12

interpreted the plan and whether the insured was entitled to benefits under the plan. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413-14 (3d Cir. 2011) (internal citations and quotations omitted).

The Court will review Metlife's denial of the Estate's claim for benefits under the de novo standard. The parties initially agreed that the Court should apply the de novo standard. However, in supplemental briefing Defendant contends that the abuse of discretion standard is appropriate. It is clear that if Metlife's decision withstands de novo review, it would withstand review under an abuse of discretion standard.[5]

The undisputed facts of the case make clear that Metlife properly denied Plaintiff's claim for life insurance benefits. The Plan states that an employee's insurance will end on the earliest of "the end of the period for which the last premium has been paid for You" or "the date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled

---

[5] Plaintiff suggests that "there is a clear conflict of interest" under Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), which somehow affects the applicable standard of review. However, whether there is a conflict of interest is irrelevant where a court applies de novo review. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 418 (3d Cir. 2011) ("Because we have concluded that a *de novo* standard of review applies, we need not reach Plaintiff's argument regarding LINA's conflict of interest in being both the payor and administrator of benefits. That issue is only pertinent to an abuse-of-discretion standard of review.").

13

CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT." (Def. SMF ¶ 3; see also Def. Ex. A at ML0173-74). The Plan provides that "[i]n certain cases insurance may be continued as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT." (Def. SMF ¶ 3; see also Def. Ex. A at ML0174). The "CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT" section provides for circumstances where the Policyholder elects to continue insurance by paying premiums on behalf of employees who cease active work, including leaves of absence. (Id. ¶ 4; see also Def. Ex. A at ML0175.)

Plaintiff does not argue that either Mr. Jennings or Delta continued to pay premiums to maintain his life insurance coverage. Instead, Plaintiff argues that Delta should have continued to pay premiums on Mr. Jennings behalf because he was on special conflict military leave of absence. Similarly, Plaintiff does not argue that Mr. Jennings' life insurance coverage was in effect at the time of his death. Plaintiff, rather, asserts that Xerox improperly cancelled Mr. Jennings' life insurance coverage after receiving his April 20, 2009 letter. Plaintiff's arguments are unavailing because the underlying material facts are not disputed, i.e., that no premiums were paid on Mr. Jennings behalf after May, 2009 and his basic life insurance coverage was not in effect at the time of his death, and that Metlife had no knowledge of Mr. Jennings'

14

participation in the Plan, or his dealings with the Delta ESC and Xerox, until 2011, almost two years after his death. Therefore, the Court concludes that Metlife's denial of his claim was proper and in accordance with the Plan terms.

Moreover, the Court finds that the present action is similar to Rowello v. Healthcare Benefits, Inc., Civ. 12-4326 (RBK/JS), 2013 WL 6510475, at *9 (D.N.J. Dec. 13, 2013) and Echague v. Metro. Life Ins. Co., Civ. 12-00640 (WHO), 2014 WL 2089331 (N.D. Cal. May 19, 2014), in which the courts found no basis upon which to hold a claim administrator responsible for potential errors by third-parties about which they were unaware. In Rowello, plaintiff's husband was employed by The Cooper Health System and enrolled in an employee welfare benefit plan. Rowello, 2013 WL 6510475, at *1. The plan was "self-administered," meaning that Cooper managed and administered the plan, including enrolling participants, providing information about plan requirements, calculating and collecting premiums, and submitting premiums to defendant Unum Life Insurance Company. Id. Unum was the claim administrator, while a separate entity, HealthCare Benefits Trust ("HCB") was the plan administrator. Id. After plaintiff's husband's death, plaintiff filed a claim for basic and supplemental life insurance. Id. at *2. Unum denied plaintiff's application for an additional $130,000 in supplemental benefits, explaining that decedent

never submitted the "evidence of insurability" form, which was
required to receive supplemental life insurance coverage. Id.
Plaintiff argued that decedent had submitted this form to
Cooper, which should have forwarded it to Unum. The court
credited Unum's explanation that it did not know of the
decedent's attempt to increase his benefits until the claim was
filed because Cooper forwarded insurance premiums for the group
to Unum on an aggregate basis. Id. The court found that Unum did
not abuse its discretion in denying plaintiff's claim because
plaintiff failed to offer any evidence that Unum received or
even knew of the required form. Id. at *6. Importantly, the
court observed that even if Cooper received and misplaced the
form, such action could not be attributed to Unum. Id.

     Moreover, the court rejected plaintiff's argument that Unum
should be liable based on an estoppel theory because decedent
paid the premiums necessary to maintain supplemental life
insurance coverage for nearly six years. Id. at *7. The court
reasoned that "Unum did not know that these premiums were being
paid for Mr. Rowello's supplemental insurance until after a
claim had been submitted, when it requested proof from Cooper
that Mr. Rowello had paid his premiums up until the date of his
death . . . . But, even if the payment of premium was sufficient
to support a finding of estoppel, it is unclear how Unum could
have known that Mr. Rowello was being charged premiums by Cooper

16

for his particular coverage increase that never became
effective." Id. at *9. Metlife's position in the present case is
even stronger than Unum's in Rowello; not only was Metlife (like
Unum) unaware of Mr. Jennings' participation in the insurance
plan, but (unlike Unum) Metlife received no premium for coverage
on behalf of Mr. Jennings because neither the employer nor the
employee remitted a premium.

Similarly, in Echague, on facts strikingly similar to those
in the present case, the court found that Metlife did not abuse
its discretion in denying plaintiff's claim for benefits where
it was clear that decedent's coverage had lapsed because of her
leave status and the termination of premium payments. Echague,
2014 WL 2089331, at *10. Decedent's employer outsourced its
payroll and benefits administration to a third-party, TriNet,
which offered both basic and supplemental life insurance
policies. Id. at *1. Metlife was the claim administrator with
discretionary authority under the plan. Id. at *6. Plaintiff
argued that his claim for benefits under his wife's policy was
improperly denied because his wife was on a leave of absence and
her employer should have continued paying benefits on her
behalf. Id. at *5. During her leave of absence, decedent's
employer paid premiums on her behalf until March, 2011. Id. at
*1. TriNet then sent decedent two letters, encouraging her to
review the provisions of the employee handbook regarding her

17

leave of absence and FMLA. Id. Decedent sent an email to TriNet, as well as her employer indicating that she did not want her insurance to lapse and requesting information on her premium payments. Id. at *2. After Metlife denied plaintiff's initial claim based on non-payment of premiums, plaintiff argued that neither he nor his wife was told that the policies were at risk of terminating and neither was aware that the employer stopped paying premiums on her behalf. Id.

The court granted Metlife's motion for summary judgment, finding that decedent's coverage terminated when premiums ceased to be paid or when she ceased active work. Id. at *10. It was undisputed that decedent ceased active work when she went on leave and that no premiums were paid on her policies after March, 2011. Id. Accordingly, her policy was not in effect at the time of her death in June, 2011. Id. at *2. Metlife permitted plaintiff to submit additional information to support his claim, but the documents plaintiff submitted only supported Metlife's determination that decedent's coverage had lapsed. Id. In addressing plaintiff's breach of fiduciary duty claim against Metlife, the court found that Metlife was a fiduciary, "but only with respect to claim administration." Id. at *18. Notably, the court emphasized that prior to plaintiff's claim, Metlife "had no information regarding the identity of plan participants, much

less knowledge of the communications between TriNet and the participants." Id.

In the present action, as in Rowello, Plaintiff identifies no basis for finding that Metlife erred in denying Plaintiff's claim and no basis for holding Metlife liable for an error by Xerox. Metlife, like the claim administrator in Rowello, did not know of Mr. Jennings' efforts to maintain or discontinue his life insurance coverage until his wife filed a claim for benefits in October, 2011. Moreover, like Echague, it is undisputed in the present case that Metlife received no premium payments after May, 2009. Under the terms of the plan, Metlife properly denied Plaintiff's claim for benefits because Mr. Jennings' life insurance coverage was not in effect at the time of his death in December, 2009.

In viewing the facts in the light most favorable to Plaintiff, the Court assumes that Xerox erred in cancelling Mr. Jennings' life insurance coverage and that Delta was required to continue to pay premiums on Mr. Jennings' behalf during his leave of absence. However, even if one assumes, for purposes of Metlife's motion, that Xerox erred in cancelling Mr. Jennings' benefits upon receipt of his April 20, 2009 letter, Metlife had no role in this determination and no knowledge of it. Because Metlife received aggregate premium payments from Delta as part of the group plan, Metlife did not even know of Mr. Jennings'

19

identity or participation until the filing of the claim for benefits. As in <u>Echague</u>, Plaintiff's arguments and the documents in the record only support a potential error committed by a third-party at least six months prior to her husband's death and over two years prior to the filing of the claim. Because Metlife only maintains a fiduciary duty as to claim administration, it is immaterial to the propriety of its claim determination whether Xerox misinterpreted Mr. Jennings' cancellation requests and inquiries and erred in terminating his life insurance coverage. Even if Delta was required to continue to pay premiums on Mr. Jennings' behalf during his leave of absence, it remains undisputed that no premiums were paid and no coverage was in effect at the time of his death. Therefore, the Court concludes that Metlife's claim determination was proper and in accordance with the Plan terms.[6]

Plaintiff argues in supplemental briefing that it is proper to impute Xerox's knowledge of particular facts to Metlife based on agency law. However, Plaintiff's argument consists of nothing more than a general recitation of common law agency principles with no connection to the facts of this case.[7] Plaintiff admits

---

[6] In holding that Metlife's denial was proper under the terms of the Plan, the Court does not consider the culpability of Delta, the Plan, or Xerox as they are not parties to this action.

[7] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and

that Metlife is not the Plan's record-keeper and thus "does not
maintain records regarding who is insured under the terms of the
Plan or send bills or any other pre-claim notices to Plan
participants regarding their insurance or their participation in
the Plan." (Def. SMF ¶ 5.) Moreover, Defendant's counsel
represented at oral argument that Metlife had no role in the
selection or hiring of Xerox and no involvement in billing and
cancellation decisions regarding Mr. Jennings' coverages, and
Plaintiff does not aver otherwise. There is no evidence that
Xerox was an agent of Metlife, nor that Xerox's errors or

---

subject to the principal's control, and the agent manifests
assent or otherwise consents so to act." Restatement (Third) Of
Agency § 1.01 (2006). Under common law, there are three bases
for attributing the legal consequences of one's actions to
another: (1) actual authority; (2) apparent authority; and (3)
respondeat superior. "An agent acts with actual authority when,
at the time of taking action that has legal consequences for the
principal, the agent reasonably believes, in accordance with the
principal's manifestations to the agent, that the principal
wishes the agent so to act." Id. § 2.01. "Apparent authority is
the power held by an agent or other actor to affect a
principal's legal relations with third parties when a third
party reasonably believes the actor has authority to act on
behalf of the principal and that belief is traceable to the
principal's manifestations." Id. § 2.03. Respondeat superior
requires an employer-employee relationship. Id. § 2.04. In the
present case, none of these bases apply to attribute Xerox's
alleged mistakes to Metlife. There are no facts in the record to
suggest that Metlife manifested an intent, whether express or
implied, for Xerox to act in any manner, let alone to cancel Mr.
Jennings' coverages. In fact, there is no evidence at all
regarding Metlife's "manifestations" to Xerox or to third-
parties such that could establish agency. The only evidence in
the record regarding Metlife's relationship with Xerox shows
that Metlife had no role in hiring Xerox and no awareness of or
involvement in Xerox's billing and cancellation decisions.

omissions are attributable to Metlife under the Plan. In fact, Metlife had no contact with Mr. Jennings or his beneficiaries and no knowledge of his identity or participation in the Plan until his wife filed a claim for benefits in October, 2011, nor did Metlife receive any premiums for such coverage within six months prior to Mr. Jennings' death. In light of these undisputed facts, the Court finds no basis to impute to Metlife any potential errors by Xerox or Delta.

**V.    CONCLUSION**

In light of the foregoing, the Court will grant Metlife's motion for summary judgment. After viewing the facts most favorably to Plaintiff, the Court concludes that Metlife's denial of Plaintiff's claim for benefits was proper and consistent with the Plan terms because it is clear that no premiums were paid on Mr. Jennings' behalf and no life insurance coverage was in effect at the time of his death. Moreover, Plaintiff has failed to identify any authority upon which Metlife may be held liable for errors by Xerox in billing and cancellation decisions. An accompanying Order will be entered.

**September 22, 2014**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge

22